UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re<br>Thomas Kusz and<br>Mary Kusz,<br>        Debtors. | Chapter 7<br><br>Case No. 14-24961-svk |

| | |
|---|---|
| Law Offices of Hans A. Buehler, LLC,<br><br>        Plaintiff,<br>v.<br><br>Thomas Kusz and<br>Mary Kusz,<br>        Defendants. | Adv. No. 14-2350 |

**MEMORANDUM DECISION**

The issue is whether Thomas and Mary Kusz (the "Debtors") intended to defraud their former attorney, Hans Buehler. The parties considered themselves friends until Attorney Buehler represented Mr. Kusz in obtaining long term disability benefits from the Wisconsin Retirement System ("WSR").

To qualify for long term WSR disability benefits, two doctors must certify that Mr. Kusz is totally disabled. Attorney Buehler testified that Mr. Kusz's alleged disability, caused by bulging disks in his back, can be extremely difficult to prove. Therefore, Attorney Buehler agreed to take the case on a contingency fee basis. At their first meeting to discuss the engagement, the Debtors signed a "Contract to Employ Attorney," with a 20% contingency fee. (Plaintiff's Exhibit 1; ECF 37 at 1.)

Indeed one doctor refused to provide the certification. Attorney Buehler referred Mr. Kusz to another doctor who was willing to provide the necessary report to enable Mr. Kusz to

obtain the benefits. Attorney Buehler submitted the required reports and forms to WSR's insurance company, and made calls and sent several follow-up letters. The representative contacted the Debtors about this "unnecessary" communication and suggested that Attorney Buehler was trying to increase his own fees at the Debtors' expense.

The Debtors then met with a WSR benefits representative and learned that the benefits would be considerably smaller than they had anticipated. In response, Mr. Kusz visited Attorney Buehler in an attempt to pay him in full for the time he had expended and terminate the relationship, but Mr. Kusz ended up signing another agreement to pay "20% attorney fees each month when the disability check arrives." (Plaintiff's Exhibit 19; ECF 37 at 46.)

Returning home from that meeting, the Debtors discussed the amount of the anticipated benefits and the amount of Attorney Buehler's fee and determined that the fee was unreasonable. They contacted another attorney who suggested that they file a grievance against Attorney Buehler with the Office of Lawyer Regulation ("OLR"). They filed the grievance, but the OLR found no basis for disciplining Attorney Buehler and dismissed it. (Plaintiff's Exhibit 12; ECF 37 at 38.)

Attorney Buehler sued the Debtors and obtained a judgment for $66,628.26. (Plaintiff's Exhibit 18; ECF 38 at 66-71.) The Debtors filed a Chapter 7 bankruptcy petition, and Attorney Buehler filed a complaint to except the judgment from the bankruptcy discharge under 11 U.S.C. § 523(a)(2)(A).

The elements necessary to prove nondischargeability under § 523(a)(2)(A) are: (1) the debtor made a false representation knowing it to be false or with reckless disregard for the truth; (2) the debtor made the representation with the intent to deceive the creditor; and (3) the creditor justifiably relied on the false representation to the creditor's detriment. *Ojeda v. Goldberg*, 599

F.3d 712, 717 (7th Cir. 2010) (citing *In re Scarlata*, 979 F.2d 521, 525 (7th Cir. 1992); *Bank One, N.A. v. Mayer (In re Mayer)*, 173 B.R. 373, 377 (N.D. Ill. 1994)). Attorney Buehler had the burden of proving these elements by a preponderance of the evidence. *Id.*

At the trial held on January 27, 2015, after considering the testimony of the witnesses and the exhibits, the Court found that Attorney Buehler met his burden of proof on all the elements except the Debtors' intent. A critical factor impacting the Court's analysis of that factor was Attorney Buehler's testimony that he meticulously explained the 20% contingent fee arrangement (along with the reason for such an arrangement) to the Debtors, who agreed to the fee by signing the fee agreement. Attorney Buehler testified that the Debtors pointed out a blank line in the fee agreement for the costs to be paid in advance by the Debtors. In response, Attorney Buehler said that he filled in "0" on his copy of the agreement, but not on theirs. Mr. Kusz testified that Attorney Buehler did not explain the agreement, and the Debtors thought the fee arrangement was based on an hourly rate. The Court found Attorney Buehler's testimony more credible and announced that it was inclined to rule for Attorney Buehler.

The Debtors' attorney requested the opportunity to file a post-trial brief to demonstrate that the totality of the circumstances do not indicate that the Debtors intended to deceive Attorney Buehler, and the Court granted this request. Post-trial briefs have now been filed, and this Memorandum Decision constitutes the Court's findings of fact and conclusions of law on this matter.

The alleged false representation here is the Debtors' promise to pay Attorney Buehler 20% of the disability benefits when they were received. "The making of a promise normally implies at the very least that the promisor does not have a fixed intention not to honor it; so, if he does have that intention, he is guilty of misrepresentation." *Milwaukee Auction Galleries v.*

3

*Chalk*, 13 F.3d 1107, 1109 (7th Cir. 1994); *see also Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997) ("If, at the time he made his promise, the debtor did not *intend to perform*, then he has made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of § 523(a)(2)(A) are met).") In *Chalk*, the court pointed out that to prevent the accusation of fraud in every breach of contract action, there must be more evidence than simply the defendant's failure to perform to support the inference that the defendant made the promise not intending to perform it. *Id.*

This Court faced a similar issue in *James Cape & Sons Co. v. Bowles (In re Bowles)*, 318 B.R. 129 (Bankr. E.D. Wis. 2004). In that case, the debtor promised to remit future payments on a construction project to a specific restricted bank account. The Court noted that generally there is no cause of action for fraud for misrepresentations as to future promises, but a "narrow exception" exists where at the time the promise was made, the debtor had the intent not to perform the promised act. *Id*. at 144. The Court quoted extensively from *Palmacci, supra*:

> A representation of the maker's own intention to do a particular thing is fraudulent if he does not have that intention at the time he makes the representation…. Likewise, a promise made without the intent to perform it is held to be a sufficient basis for an action of deceit. On the other hand, if, at the time he makes a promise, the maker honestly intends to keep it but later changes his mind or fails or refuses to carry his expressed intention into effect, there has been no misrepresentation. This is true even if there is no excuse for the subsequent breach. A debtor's statement of future intention is not necessarily a misrepresentation if intervening events cause the debtor's future actions to deviate from previously expressed intentions.

*Id.* (quoting *Pamlmacci*, 121 F.3d at 786-87 (citations and internal quotations omitted)). In *Bowles*, the Court concluded that the debtor intended to comply with his promise at the time he made it, but subsequent disputes caused him to renege. *Id.* at 145. Therefore there was no fraud, and the debt was dischargeable.

This case is similar. The Debtors defaulted on their promise to pay Attorney Buehler 20% of the disability benefits. Their explanation is that they changed their mind about paying him because, once they learned that the benefits would be substantially less than they expected, they thought the fees were unreasonable. There is little evidence that they intended not to pay him at the time the fee agreement was signed. In fact, after the meeting in which they learned about the actual amount of the benefits, they called Attorney Buehler to pay his fees and terminate his services. That telephone call led to the meeting where Mr. Kusz signed another acknowledgement that he would pay Attorney Buehler 20% of his disability benefits, starting when he received his first check. When he discussed this arrangement with his wife, they decided to seek advice from another attorney. That attorney reinforced the Debtors' belief that the fee was unreasonable, and he suggested that they should file a grievance with the OLR. These events do not tend to show that the Debtors intended not to pay Attorney Buehler when they signed the fee agreement, but rather that the Debtors changed their minds later, when they learned the amount of the benefits. As noted in *Palmacci* and *Bowles*, changing one's mind does not constitute fraud.

At the trial, there was a credibility dispute between the Debtors (who testified that Attorney Buehler never explained the fee arrangement) and Attorney Buehler (who stated that he went over the fee agreement in detail). The Court resolved this credibility dispute in Attorney Buehler's favor. As a result, the Court's initial inclination was that Attorney Buehler had met his burden of proof that the Debtors intended to defraud him by making a promise that they did not intend to keep. However, further reflection and research has changed the Court's preliminary view.

5

In *deBenedictis v. Brady-Zell (In re Brady-Zell)*, No. 10-1119, 2013 Bankr. LEXIS 1322 (Bankr. D. Mass. Apr. 2, 2013), a debtor hired an attorney to represent her in a divorce. The attorney received a court-ordered $25,000 payment from the debtor's husband, and the attorney agreed to bill against that retainer and seek payment from the debtor for the balance when the matter was concluded. *Id.* at *5. The attorney memorialized this fee arrangement in a letter to the debtor, but the debtor denied receiving it. The representation mushroomed into 200 hours of work – well beyond what either the debtor or the attorney anticipated, and, after application of the retainer, the balance due was over $62,000. The debtor did not pay, although she made several promises to do so. Finally she filed bankruptcy, and the attorney tried to except the debt from discharge under § 523(a)(2)(A). The bankruptcy court found the debtor's testimony that she thought the $25,000 was a flat fee or cap "not credible." *Id.* at *5. The court also labeled the debtor's protestations about not understanding the amount of the fees "pure fabrication." *Id.* at *8. Citing *Palmacci*, the court stated that the burden was on the attorney to show that the debtor never intended to pay any balance of the fee above $25,000. *Id.* at *21. The court explained:

> I recognize the difficulty of establishing lack of intent to honor a promise. Availability of direct evidence to prove a debtor's intent to deceive a creditor is unlikely to be obtained. The court, therefore, may infer fraudulent intent from the totality of circumstances. In this instance, the totality of the circumstances is inconclusive, with the weight of the evidence split about even. The law, however, requires a preponderance, a tipping of the balance in favor of the plaintiff. For lack of a preponderance on this issue, the Court must resolve this issue in favor of the defendant.

*Id.* at *24 (internal citations and quotations omitted).

The attorney appealed. *See deBenedictis v. Brady-Zell (In re Brady-Zell)*, 500 B.R. 295 (B.A.P. 1st Cir. 2013). The attorney based her appeal on the debtor's lack of credibility, arguing that the debtor's dishonesty about her understanding of the fee agreement constituted proof that the debtor never intended to pay more than the $25,000 retainer. The bankruptcy appellate panel

rejected this argument: "Although the bankruptcy court found that [the debtor] lacked credibility in her testimony at trial, that alone was not enough to establish fraudulent intent at the time she made the promise to pay." *Id.* at 303. The court affirmed the bankruptcy court. *Id.* at 305.

The attorney appealed again. *See deBenedictis v. Brady-Zell (In re Brady-Zell)*, 756 F.3d 69 (1st Cir. 2014). Once more, the attorney pointed to the debtor's lack of veracity and cited her "dishonest and untrustworthy" testimony. *Id.* at 72. The court of appeals recognized that the bankruptcy court found the debtor's testimony not credible. Nonetheless, the court affirmed, finding that where the weight of the evidence is evenly split, the bankruptcy court properly determined that the attorney had not met her burden of proof.

In this case, the Court deemed not credible the Debtor's testimony that Attorney Buehler never explained the fee agreement. However, that does not end the inquiry. Attorney Buehler was still required to prove that the Debtors did not intend to honor the fee agreement when they signed it. The evidence that suggests that they possessed this mindset is lacking. Instead, the evidence shows that they changed their minds when they found out the disability benefits would not be as generous as they thought. Seeking a second opinion about the fee arrangement and filing a complaint with OLR tends to prove that they changed their minds rather than that they never intended to pay the fee in the first place. Changing one's mind about paying a debt to a friend may be immoral and dishonest, but it is not fraudulent.

Since Attorney Buehler failed to show by a preponderance of the evidence that the Debtors entered into the fee agreement with the intent not to honor it, he has failed to carry his burden of proof, and the relief he requested in the Complaint must be denied. The Court notes that the Debtors' conduct in the treatment of their friend is inexcusable. The Debtors never discussed with him the insurance representative's accusation that Attorney Buehler was

7

Case 14-02350-svk    Doc 46    Filed 04/03/15    Page 7 of 8

"ramping up" the fees.  Rather than attempting to negotiate a reduction in the fee, they sought a "second opinion" from an attorney who was not involved in the case, and presumably did not know about Attorney Buehler's role in referring Mr. Kusz to a doctor who provided a critical certification.  When that attorney told them the fee was unreasonable, without discussing it with Attorney Buehler, they filed an OLR grievance against him.  These actions, coupled with Mr. Kusz's implausible testimony, are troubling.  However, as demonstrated by the *deBenedictis* case, this conduct alone is insufficient to prove that the Debtors did not intend to honor the fee agreement at its inception.  And the Court recognized in *Bowles* that even if there is no justifiable excuse for a breach of a contract, the breach itself does not constitute fraud.  The Court will enter a separate Order dismissing the Complaint.

Dated: April 3, 2015

By the Court:

/s/ Susan Kelley
Susan V. Kelley
Chief U.S. Bankruptcy Judge

8

Case 14-02350-svk    Doc 46    Filed 04/03/15    Page 8 of 8